OPINION
The following appeal arises from the decision of the Belmont County Court, Western Division, wherein William T. Latham, Jr. was found guilty of driving under the influence of alcohol in violation of R.C. 4511.19(A)(1). For the reasons set forth below, the decision of the trial court is affirmed.
 I. FACTS
The conviction in the case at bar arises out of events which I transpired on January 7, 1996. During the early morning hours, Sergeant Jeffrey Bernard of the Ohio State Highway Patrol observed a motor vehicle being operated on U.S. Route 40 near State Route 149 in Union Township, Belmont County. It would later be determined that the vehicle was being driven by William T. Latham, Jr., appellant. In that Bernard observed a broken headlight on appellant's vehicle, he pulled his cruiser to the side of the road in order to make a u-turn and effectuate a stop. Prior to completing his u-turn, Bernard witnessed appellant pulling his vehicle into a parking lot adjacent to State Route 149. As such, Bernard proceeded to drive his cruiser to the lot in order to issue a citation to the vehicle's driver. It should be noted that Bernard had not activated his lights or siren up to this point.
Upon approaching the vehicle which had stopped in the parking lot, Bernard found that the vehicle's occupants had fled on foot. As a considerable amount of snow had accumulated in the parking lot, Bernard was able to view two sets of footprints, one from the driver's side door and one from the passenger's side door, leading from the vehicle into a field next to the lot. Bernard followed the footprints and found that they went out into the field and then back to the lot in which the vehicle had been abandoned. However, a search of the area failed to reveal any suspects. Therefore, Bernard re-entered his cruiser and patrolled the area in the immediate vicinity of the parking lot.
Shortly thereafter, Bernard received a radio transmission from Sergeant Jon C. Hawthorne of the Belmont County Sheriff's Department. Hawthorne had heard on his police scanner that a suspect had fled from a vehicle so he proceeded to the area to assist in locating the individual. Upon arriving near the parking lot, Hawthorne witnessed an individual, who was later determined to be appellant, walking from the field into the parking lot. Hawthorne further witnessed appellant attempting to conceal himself under a semi trailer which was located in the lot. Therefore, Hawthorne and Bernard coordinated their efforts by approaching the lot from opposite ends in an attempt to flush appellant out. As Hawthorne neared the trailer, appellant fled back towards the field in an attempt to escape. However, appellant stumbled and fell face first into the snow. Hawthorne kept a light on appellant while Bernard approached to inquire.
Upon reaching appellant, Bernard observed that appellant appeared quite intoxicated. There was a strong odor of alcohol present about appellant and his speech was badly slurred. As such, Bernard accompanied appellant back to the parking lot where the vehicle and cruiser were located. In that appellant staggered as he walked and was difficult to understand when he spoke, Bernard's suspicion was further raised. Bernard first took appellant to the abandoned vehicle where he compared appellant's footprint to those left in the snow on both sides of the vehicle. Appellant was then taken to the cruiser where Bernard conducted a nystagmus test which appellant failed. Due to the poor weather conditions, Bernard did not feel further sobriety testing could be conducted. Therefore, appellant was placed under arrest and transported to the Ohio State Highway Patrol Post. In that appellant failed to provide an adequate breath sample, despite several attempts, he was cited for driving under the influence of alcohol in violation of R.C. 4511.19(A)(1).
On January 19, 1996, appellant appeared through counsel and entered a plea of not guilty to the charged offense. Following appropriate discovery and the execution of a waiver of jury trial form, this matter proceeded to trial to the bench on March 12, 1996. Due to time constraints experienced by the trial court on March 12, the trial was recessed and was reconvened on April 16, 1996. While the facts described previously regarding the January 7, 1996 incident are for the most part undisputed, a major source of contention arose during trial surrounding the questioning and Mirandizing of appellant. Sergeant Bernard testified to varying versions of the facts as to what occurred upon approaching appellant in the field. Bernard first indicated that he Mirandized appellant on the way back to the parking lot then subsequently asked him if he had driven the car and whether he had been drinking. On cross-examination however, it was discovered that in fact Bernard immediately asked appellant upon reaching him in the field if he was the driver of the vehicle. Bernard indicated that this question was necessary as only one individual had been located although two sets of footprints were located outside the vehicle. Upon learning that appellant was the driver, Bernard testified that he then took appellant back to the vehicle, Mirandized him and placed him under arrest.
Due to the fact that appellant chose not to present any evidence or testimony on his own behalf, the matter was taken under advisement by the trial court following the close of the state's case. On April 24, 1996, the trial court issued its entry finding appellant guilty of a violation of R.C. 4511.19(A)(1). The court conducted sentencing on May 9, 1996 at which time appellant was sentenced to thirty days in jail with twenty days suspended, received a $1,000 fine plus costs, had his driver's license suspended for a period of one year and was advised to seek an evaluation at Crossroads for any potential alcohol addiction. Appellant's sentence was stayed pending an appeal of the matter.
A timely notice of appeal was filed on May 14, 1996. However, this court sua sponte dismissed the appeal on December 2, 1997 for want of timely prosecution. The appeal was reinstated on February 19, 1998 in response to appellant's motion to reopen the appeal.
Appellant raises two assignments of error on appeal.
 II. ASSIGNMENT OF ERROR NUMBER ONE
Appellant's first assignment of error reads:
 "THE TRIAL COURT ERRED TO THE PREJUDICE OF DEFENDANT-APPELLANT WHEN IT CONVICTED HIM OF DRIVING UNDER THE INFLUENCE OF ALCOHOL IN VIOLATION REVISED CODE 4511.19(A)(1) BECAUSE THE STATE FAILED TO PROVE THAT DEFENDANT-APPELLANT WAS OPERATING A MOTOR VEHICLE WITHIN THE STATUTORY MEANING."
In appellant's first assignment of error, it is argued that the decision of the trial court as to the driving under the influence violation was against the manifest weight of the evidence. The basis for this argument is appellant's contention that the state failed to prove beyond a reasonable doubt that he was in fact operating the motor vehicle within the statutory meaning. Appellant asserts that since Sergeant Bernard gave conflicting testimony as to the point in time which he Mirandized appellant, the admission that he was in fact the driver of the vehicle cannot be relied upon. Essentially, if Bernard inquired prior to instituting the Miranda warnings as to whether appellant was the driver and whether he had been drinking, any answers to these statements should have been excluded. It is appellant's position that these questions sought damaging information and thus Miranda warnings were required prior to Bernard's inquiry.
Absent this admission, appellant asserts that the state lacked any reliable evidence to prove that he was the driver of the vehicle. Bernard never viewed appellant operating the vehicle nor was appellant present in the vehicle when Bernard pulled into the parking lot. Additionally, no witness testimony was presented to substantiate a finding that appellant was the driver rather than the second individual who had occupied the vehicle. The only other evidence provided by the state to establish that appellant was the driver was Bernard's testimony that the footprints leading from the driver's side of the vehicle matched appellant's footprints. It is asserted that this evidence was unreliable and as such, the state was unable to establish that appellant was the driver of the vehicle.
 A. STANDARD OF REVIEW
Weight of the evidence deals with the court's decision as to which party in a case had the greater amount of credible evidence supporting it. State v. Thompkins (1997), 78 Ohio St.3d 380, 387. Reviewing courts will not reverse a decision on manifest weight grounds unless, after evaluating the record, weighing the evidence and the inferences that can be reasonably be drawn therefrom, and considering the witnesses' credibility, the court determines that the trial court "clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered." Id. quoting State v. Martin
(1983), 20 Ohio App.3d 172, 175. Only in exceptional cases where the evidence weighs heavily against the conviction should the court grant a new trial on manifest weight grounds. Id.
 B. APPLICABLE LAW
Appellant's argument centers around the ability of the trial court to rely upon his statement that he was the driver of the vehicle which was pursued by Sergeant Bernard. Without this statement, appellant believes he is entitled to a reversal of the trial court's decision as no other reliable evidence exists to establish that he was operating the motor vehicle. Therefore, appellant must rely on an exclusion of the statement based upon a failure to properly Mirandize prior to questioning.
In addition to multiple other purposes, the Miranda rights have been adopted in order to protect one's constitutional guarantee to be free from being compelled to act as a witness against himself. The reading of the Miranda rights as a procedural safeguard against self incrimination arises whenever an individual is subjected to custodial interrogation by a law enforcement officer. Miranda v. Arizona (1966), 384 U.S. 436,478. The Supreme Court explained "custodial interrogation" as being whenever questioning is initiated by a law enforcement officer after a person has been taken into custody or otherwise deprived of his freedom of action." Id. at 444. A person will be viewed as being in custody when a formal arrest has occurred or when a restraint on one's freedom of movement has occurred to the degree associated with a formal arrest. Oregon v. Mathiason
(1977), 429 U.S. 492, 495. Furthermore, to qualify as interrogation express questioning or its functional equivalent must occur which the law enforcement officer knows is reasonably likely to elicit an incriminating response. Rhode Island v. Innis
(1980), 446 U.S. 291, 300.
While the Miranda doctrine has been held to apply to custodial interrogation of a suspect accused of a misdemeanor traffic offense, it does not apply to roadside questioning of a motorist detained pursuant to a traffic stop. Berkemer v. McCarty (1984),468 U.S. 420, 477. Specifically, the Supreme Court held in its decision that "[g]eneral on-the-scene questioning as to the facts surrounding a crime or other general questioning of citizens in the fact finding process" is not affected by the Miranda doctrine. Id. at 477-478. Although the court clearly desired to protect individual rights, they similarly desired to preserve the "ample latitude" afforded law enforcement officers in the exercise of their duties as related to investigatory functions.Id. In Berkemer, the court upheld a law enforcement officer's moderate questioning of a subject as well as the request to perform a sobriety test as part of a routine roadside traffic stop as such could not be characterized as the functional equivalent to an arrest. Although an individual is suspected of driving under the influence of alcohol, the mere fact that an officer's investigation focuses on the individual does not trigger a need for the Miranda warnings. Minnesota v. Murphy
(1984), 465 U.S. 420.
 C. ANALYSIS
Although appellant is of the opinion that his statement regarding operating the motor vehicle was obtained in contravention to the Miranda doctrine, such is clearly not the case. While Sergeant Bernard's testimony was inconsistent at the trial regarding when exactly appellant was Mirandized, this determination is inconsequential. According to Miranda andBerkemer, supra, Miranda rights need not be instituted until the point in time in which an individual is subjected to custodial interrogation. Hence, a reading of the Miranda rights in the casesub judice was not warranted until such time as appellant was arrested or his freedom of movement was compromised to such an extent as to be equivalent to an arrest. Mathiason, supra.
In reviewing the testimony of Sergeants Bernard and Hawthorne, it is evident that although uncertainty exists as to when the Miranda rights were read to appellant, the sequence of events subsequent to appellant fleeing and falling to the ground is relatively clear. After appellant had fallen and Bernard approached him, Bernard took appellant to the abandoned vehicle to compare footprints. Appellant then was taken to the cruiser for the nystagmus test which was performed. Due to the fact that appellant failed this test in conjunction with the odor of alcohol, slurred speech and unstable gait, Bernard then placed appellant under arrest for driving under the influence. It was not until this point that appellant could be viewed as being in custody. As such, it was not until the point of arrest that Miranda rights were warranted.
Furthermore, the case law is clear that investigatory type questions as well as sobriety testing may be conducted prior to the giving of one's Miranda rights. Berkemer and Murphy, supra. It is irrelevant whether Bernard asked appellant if he was the driver of the vehicle immediately upon approaching appellant in the field or whether he waited until after reading the Miranda rights as either occasion would be appropriate. This type of question is exactly the sort which the United States Supreme Court desired to permit in order to avoid interfering with the exercise of a law enforcement officer's legitimate duties as related to routine traffic stops. Berkemer, supra. Thus, the questions asked of appellant additionally do not qualify as interrogation as anticipated by the court.
This determination is especially relevant in the case at bar as Bernard specified that appellant was asked if he was the driver as he was the only individual located in the area of the parking lot. In that two sets of footprints were found near the vehicle, Bernard was clearly within the scope of his investigatory duties to insure that he had in fact located the driver of the vehicle. After all, Bernard's initial basis for following the vehicle in question was to cite the driver for an equipment violation. Since a reading of appellant's Miranda rights was not required prior to Bernard asking the questions at issue, appellant's answers to such could properly be relied upon to establish that he in fact had been operating the motor vehicle within the statutory meaning.
As a side note, while appellant asserts that there was no other reliable evidence which could be utilized to establish he operated the vehicle in question, such is not the case. As previously noted, Sergeant Bernard testified at the trial that upon returning with appellant to the abandoned vehicle he compared appellant's footprints to those in the snow on both sides of the vehicle. Sergeant Hawthorne's testimony corroborated that this was actually done by Bernard. Further, Bernard testified that the footprints leading from the driver's side of the vehicle to the field were an exact match. In his opinion, the prints were identical not only in size but also as to the design the footprint left in the snow. As to the prints leading from the passenger's side of the vehicle, Bernard testified that the comparison was not even close to being a match.
The Ohio Supreme Court has previously held that testimony on footprints does not require the use of an expert witness. Statev. Jells (1990), 53 Ohio St.3d 22, 28. On the contrary, lay witnesses may testify on this issue so long as their opinions are based upon measurements or peculiarities in the prints. Id. Such was found to be consistent with Evid.R. 701 as to the use of lay witness testimony. Id. In support of this conclusion, the court cited to a myriad of cases from other jurisdictions which arrived at similar conclusions on the issue.
Based upon the law as set forth in Jells, the trial court had additional evidence that appellant was the driver of the vehicle in light of Bernard's testimony as to the footprints in the snow. Bernard's testimony was sufficiently specific as to both size and particularities to suffice as reliable evidence on the issue of whether appellant had operated the motor vehicle. In that both appellant's statement and Bernard's testimony as to the footprints constitute admissible, reliable evidence on the pertinent issue of the operation of the motor vehicle, this court cannot hold that the trial court's decision convicting appellant was against the manifest weight of the evidence. This evidence provides ample support for the determination that appellant was the driver. Furthermore, absolutely no evidence was provided by appellant to refute that he drove the vehicle into the lot prior to abandoning it and fleeing into the field.
Appellant's first assignment of error is without merit.
 III. ASSIGNMENT OF ERROR NUMBER TWO
Appellant's second assignment of error reads:
 "THE TRIAL COURT ERRED TO THE PREJUDICE OF A (sic) DEFENDANT-APPELLANT WHEN IT CONVICTED HIM OF DRIVING UNDER THE INFLUENCE OF ALCOHOL IN VIOLATION OF REVISED CODE 4511.19(A)(1) BECAUSE THE STATE FAILED TO SHOW DEFENDANT-APPELLANT'S ABILITY TO OPERATE A MOTOR VEHICLE WAS APPRECIABLY IMPAIRED."
In appellant's second assignment of error, it is argued that Sergeant Bernard did not have an appropriate reason for pursuing and/or stopping appellant. Appellant indicates that since Bernard did not witness any erratic driving, he was not permitted to effectuate a stop. It is appellant's belief that the headlight violation itself was insufficient to warrant a stop which resulted in a driving under the influence charge. Although appellant admits that the case law does not support the position he is proposing, he nonetheless requests that this court deviate from the case law in the case at bar.
Although appellant invites this court to stray from well-established principles of law, we respectfully decline to do so. As this court stated in State v. Winand (1996), 116 Ohio App.3d 286, all that is required of an officer to effectuate an investigatory stop is that a reasonable, articulable suspicion exists that an individual has been engaged in criminal activity.Id. at 288 citing Terry v. Ohio (1968), 392 U.S. 1; Delaware v.Prouse (1979), 440 U.S. 648. In Winand, this court held that observing the commission of a traffic offense such as speeding was sufficient to give rise to the requisite suspicion for an officer to effectuate a stop. As appellee correctly points out to this court, so long as the state can establish a reasonable, articulable suspicion existed for the stop, it will be upheld regardless of the law enforcement officer's subjective intent.Dayton v. Ericson (1996), 76 Ohio St.3d 3, 11. The Ohio Supreme Court has further held that observing a burned-out headlight on a motor vehicle creates a lawful basis for an investigatory stop.State v. Evans (1993), 67 Ohio St.3d 405.
The unrefuted testimony during the trial to the bench in this matter indicates that Sergeant Bernard observed a burned-out headlight on the motor vehicle which was later determined to be driven by appellant. Bernard further testified that it was this violation which gave rise to his decision to effectuate a stop and issue a citation to appellant. Based upon the clear dictates of Winand, Ericson and Evans, such a moving violation was sufficient to pursue and stop the motor vehicle. Hence appellant's second assignment of error is without merit.
For the foregoing reasons, the decision of the trial court is hereby affirmed.
Cox, P.J., dissents; see dissenting opinion.
Waite, J., concurs.
APPROVED:
 __________________________________ JOSEPH J. VUKOVICH, JUDGE